SHAHAN et al. v. NORTHERN TEXAS TRACTION CO. (No. 6806.)*

(Court of Civil Appeals of Texas. Austin. Oct. 29, 1924. Rehearing Denied Nov. 26, 1924.)

1. Dedication ⬅1—"Abandonment" and "dedication," distinguished.

There is a distinction between abandonment and dedication, "abandonment" being relinquishment of possession of a thing by its owner with intention of terminating his ownership without vesting it in any one else, while "dedication" is setting apart or appropriation of land to some public use, and necessarily includes abandonment of owner's right to control in so far as such rights or control conflicts with public use of property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon—Abandonment; Dedication.]

2. Railroads ⬅344(3)—Answer alleging right of way was "abandoned" held sufficient plea of dedication.

In action for death of motorist caused by hole in interurban right of way, answer alleging that company had "abandoned" right of way was sufficient plea of dedication, in view of another allegation that portion of right of way had been turned over to public for road purposes.

3. Trial ⬅352(1)—Issue submitting question of abandonment of portion of right of way required finding of dedication and not merely abandonment.

In action for death of motorist caused by hole in interurban right of way, issue submitting question whether company had "abandoned" part of right of way held sufficient to require finding whether part of right of way

was dedicated for street, and not merely finding of abandonment.

**4. Dedication 🔑44—Evidence held to sustain finding of dedication of part of interurban right of way for highway.**

Evidence *held* to sustain finding of dedication of part of interurban right of way for highway purpose.

**5. Dedication 🔑16(1)—Dedication rests upon intent, and no formal method is necessary.**

No formal method is necessary to constitute dedication; vital principle resting upon owner's intention, expressed or implied, coupled with acts clearly expressing intent.

**6. Appeal and error 🔑930(3)—Presumed that court made findings sustaining dedication when pleadings and proof raised issue.**

Whether or not issue of dedication of interurban right of way was properly submitted to jury, it will be presumed under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, that court made findings sustaining judgment, where pleadings and proof raised issue of dedication and complaining party requested no special issues.

**7. Railroads 🔑303(1)—Interurban railroad not liable for injury caused by construction of road by county.**

Interurban railroad is not liable for death of automobilist caused by hole in right of way, where hole was created by county in constructing highway.

Error from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by Ida May Shahan and others against the Northern Texas Traction Company. From judgment for defendant, plaintiffs bring error. Affirmed.

C. W. Atkinson, C. A. Wright, and Ocie Speer, all of Fort Worth, for plaintiffs in error.

Capps, Cantey, Hanger & Short, Mark McMahon, Alfred McKnight, and Warren Scarborough, all of Fort Worth, for defendant in error.

BAUGH, J. We copy from the briefs of the parties their respective statements of the case, as follows: ᐧ

"The plaintiff, Ida May Shahan, filed this suit for herself and for her three minor children, to recover damages from the Northern Texas Traction Company for the death of Clyde Shahan, husband of the plaintiff, and father of the minor children. For cause of action the plaintiff alleged in substance that the defendant, an interurban railway company, negligently maintained a hole, declivity, or excavation upon its right of way in, or so near to, a public street, as to endanger the safety of persons lawfully traveling such public street, which said dangerous place was left unguarded and as a proximate result the deceased, who was driving his car along such street in the nighttime, in the exercise of due care for his own safety, fell into such hole or declivity and was killed."

"After pleading a general denial, the defendant, among other things, specifically pleads as follows:

"(a) That the place where the accident happened was not upon the right of way of the defendant, but was upon the right of way of the Fort Worth-Dallas Pike, a public road belonging to and under the control, supervision, and maintenance of the county, and that the defendant was in no way responsible for the condition of the road and highway.

"(b) Further answering, the defendant pleaded that the accident in question occurred at or about the intersection of what is known as Conner avenue, a street running from the city of Polytechnic, and a road known as the Fort Worth-Dallas Pike; that Conner avenue runs under the tracks of the defendant in a southerly direction from where the accident occurred; that at the point where Conner avenue runs under the track of the defendant the track is situated on a high fill or dump about 18 or 20 feet high; that in about the year 1911 the city of Polytechnic, or Tarrant county, or both said city and county, required the defendant to open an underhead crossing at that point, permitting Conner avenue to run under the tracks of the defendant; that in pursuance with such order, request, and demand, the defendant tore away and removed the dirt forming the fill or dump on which its tracks were laid, and constructed concrete retaining walls about 20 feet apart in order to permit an opening under its tracks; that in the construction of the opening there were built and constructed at both ends of the concrete walls concrete wings extending or opening out from the walls and widening into Conner avenue; that at the time such wings were constructed the right of way fence of the defendant was set back out of the road and was run in a diagonal direction from the north line of the right of way fence to the north end of the concrete walls; that in constructing the wings and fence the defendant abandoned all of its right of way left out of said fence or fences for interurban or street railway purposes, and has since the year 1911 exercised no control or supervision over the same, but that the same has been turned over to Tarrant county and the city of Polytechnic for street and road purposes; that the excavation where the said Clyde Shahan received the injuries resulting in his death was entirely without the right of way fence of defendant, and within the roadway limits of the county of Tarrant or city of Polytechnic; that the city of Polytechnic and the county of Tarrant, or one or both of them, has, since the time the opening was constructed, exercised control and supervision over the roadway going under said tracks and such property forming a part of the roadway of one or both left without the fence of the defendant, and has obtained title thereto by prescription; that the county of Tarrant and the city of Polytechnic, or one or both of them, has had, since about the year 1911, complete control and supervision over all of the property lying out of the right of way fence of the defendant at or

about or near the place where the accident happened, and has maintained the same.

"(c) Defendant further pleaded that in the roadway leading under said tracks and along the approach upon the Fort Worth-Dallas Pike, there was ample and sufficient room for any one to drive an automobile or automobiles in safety, and the road was graded and graveled and was entirely safe for pedestrians, vehicles, and automobiles, and that such place in no sense constituted a dangerous crossing.

"(d) Defendant also pleaded contributory negligence in several respects."

The case was submitted to the jury on numerous special issues, on most of which the jury found against the plaintiffs, and on which findings the court rendered judgment that plaintiffs take nothing. From this judgment plaintiffs in error, who were plaintiffs below, have prosecuted this appeal.

### Opinion.

Plaintiffs in error present 25 assignments of error as grounds for reversal. However, under the view we take of the case, special issue No. 16, and special issue No. 13, submitted upon the request of the defendant, require us to affirm the judgment of the trial court and make it unnecessary for us to consider the others. These issues and the answers thereto were as follows:

"Special Issue No. 16. Had the defendant abandoned for road or street purposes, prior to the accident, that portion of defendant's right of way north of where the fence is now located, at the place of the accident? Answer yes or no. Answer: Yes.

"In answering the foregoing question you are instructed that if the defendant had moved its fence over to its present position, leaving outside of the fence a portion of its right of way with the intention on the part of the defendant company not to use the same again for any purposes, then such conduct on its part would constitute abandonment.

"Requested Special Issue No. 13. Was the hole or declivity into which the car that the said Clyde Shahan was driving fell, caused solely by Tarrant county in building the Dallas-Fort Worth cardinal road, and raising the approach of the road coming from under defendant's tracks, if you find from the evidence such approach to said cardinal road was raised by Tarrant county? Answer yes or no. Answer: Yes."

Plaintiffs in error earnestly insist that the traction company has in no sense abandoned its right of way at this particular place, but on the contrary that it was using it daily in the only manner in which it could use such right of way—that is, in the operation of cars over its tracks at this point—and that such use extends to and constitutes a use of its entire right of way as originally conveyed to it.

Defendant in error insists that in 1911 it dedicated to the public use all that portion of its right of way outside its fences as set back when Conner avenue was opened under its tracks. It is undisputed that, had the fence been replaced on the original north line of the right of way, it would have passed approximately through the center of this hole in question, thus leaving about half of this hole within the Dallas-Fort Worth highway and the other half within the right of way of defendant, except perhaps a small portion which extended out near to, if not into, Conner avenue. Practically the entire hole, however, was outside the fence as set back by the defendant in 1911.

The pleadings of the traction company on this issue were as follows:

"That at the time said roadway or street was opened under this defendant's tracks, its right of way fence was set back out of said road, and was run in a diagonal direction from the north line of defendant's right of way to the north end of said concrete wing or wall. That in so constructing said wing and said fence, this defendant abandoned said right of way for interurban or street railway purposes, and has, since that time, to wit, about the year 1911, exercised no supervision or control over said roadway, but the same has been turned over to Tarrant county and to the city of Polytechnic for street and road purposes; and defendant further shows to the court, in this connection, that the said hole and excavation where said Clyde Shahan was injured is and was entirely without the right of way fence of this defendant, and is and was located entirely within and upon the street and roadway of the city of Polytechnic and the county of Tarrant."

[1-3] There is a distinction between an abandonment by the owner of real estate, or of an easement, and a dedication of such real estate or easement to some public use. In its general signification "abandonment" means the relinquishment of the possession of a thing by the owner with the intention of terminating his ownership, but without vesting it in any one else. See 1 R. C. L. 2; 1 C. J. 5. A "dedication," on the other hand, is the setting apart or appropriation of land to some public use. A dedication of property necessarily includes an abandonment of the owner's rights thereto or control thereof in so far as such rights or control may conflict with the public use of such property. In the instant case the word "abandon" was used both in the pleadings and in the submission of the issue to the jury, but we think the further pleading with reference to the particular strip of land in question, "that same has been turned over to Tarrant county and to the city of Polytechnic for street and road purposes," was in effect a plea of dedication. The same is true of the question submitted to the jury. The form of it could very well have been improved, but as submitted it required the jury to find whether or not there had been in fact a dedication of that particular portion of the defendant's right of way, and not merely an abandonment

in the legal signification of that term. The defendant also sufficiently pleaded an acceptance and public use by the county and city of the property so turned over to them.

[4] We have carefully read the statement of facts and find that there was sufficient evidence to sustain the finding of the jury on both the special issues hereinabove set out. The vice president and general manager of the traction company testified positively that it was the intention of the defendant company at the time the fence was set back in 1911 to turn over all its right of way outside of its fence at this point to the city of Polytechnic and to Tarrant county for street and road purposes. Thereafter the traction company's section gang never cut the weeds, cleaned it off, or otherwise exercised any control over it. The evidence also shows that prior to 1911 there was practically no hole at all at this point. There was a drain there from a small ravine, but the road paralleling the right of way, running towards Dallas, was at that time only a graveled road, and elevated but little above the natural surface of the ground at this point. Subsequent to the opening of Conner avenue under the defendant's tracks, however, this graveled road was converted into a hard-surfaced, cardinal highway, and a, fill made across this ravine raising its surface several feet above the surface of the old road. In doing so a concrete drain culvert was built, the south end of which opened into this hole. In so doing the county utilized for its drainage purposes that portion of defendant's original right of way which it had "fenced out" in 1911.

[5, 6] We do not deem it necessary to discuss what constitutes a dedication of property. No formal method is necessary. The vital principle of the doctrine rests upon the intention of the owner, either express or implied, coupled with such acts as clearly express such intention. See Oswald v. Grenet, 22 Tex. 94; Clement v. City of Paris (Tex. Civ. App.) 154 S. W. 624; Poindexter v. Schaffner, 162 S. W. 22; City of Kaufman v. French (Tex. Civ. App.) 171 S. W. 831: Ry. Co. v. Sutor, 56 Tex. 496. The effect of the jury's finding in answer to special issue No. 16 was that a dedication of the land in question to a public use had been made by the defendant. But if we concede that it did not, the record discloses, in our opinion, sufficient pleadings and proof to show such dedication, and to warrant the court in so finding. And whether or not such specific issue

was properly submitted to the jury, if the pleadings and proof raised it, as they undoubtedly did in this case, it will be presumed that the trial court made such findings thereon as will support his judgment, where the party complaining requested no special charges thereon. See Vernon's Sayles' R. S. 1914, art. 1985, and cases cited thereunder.

If the hole in question was not on the right of way of defendant traction company, it would not, of course, be liable for injuries caused by such hole, and the judgment of the trial court was proper.

[7] We are also of the opinion that recovery by plaintiffs is precluded by the answer of the jury to requested special issue No. 13. We find from a careful reading of the statement of facts that there was sufficient evidence to sustain the finding of the jury on this point. If then the dangerous place, even if it be conceded that a part of it did fall upon the defendant's right of way, was created by the county in erecting a grade on its public road, placing a drain culvert thereunder, leaving it unguarded, and creating a hole thereat by grading up an intersecting street to the level of its new road, the responsibility for the dangerous place rested upon the county and not upon the traction company. The traction company had made no changes in the surface of its right of way to bring about a dangerous place, nor did it have authority to go upon the public road to repair or fill such holes as the county had made in constructing such public road. Under the evidence in the record, had the defendant traction company sought to repair or fill this hole so far as same extended over onto its original right of way, or had raised its right of way to the level of the public road, there would still have remained practically the same dangerous place on the public highway. Clearly, we think, the traction company should not be held liable for damages to one using a public highway where his death was caused by a condition created wholly by the county in the construction of its public road and the approaches thereto; and where, but for such construction, no danger would have existed, and with which construction the defendant had nothing to do.

We deem further discussion unnecessary, and have not considered the other issues raised. Accordingly, the judgment of the trial court is affirmed.

Affirmed.