**VERMILLION v. FIDEL et al.**

No. 6218.

Court of Civil Appeals of Texas. Amarillo.
April 21, 1952.

Rehearing Denied May 19, 1952.

J. R. Wilson, Wichita Falls, for appellant.

Rogers & Johnson, Wichita Falls, for appellees.

PITTS, Chief Justice.

Appellant, A. A. Vermillion, instituted this suit against appellees, John Fidel and others therein named, seeking to remove cloud from title to his certain described land situated in Wilbarger County, Texas, alleging that a certain recorded mineral lease for oil and gas on and under the said land previously executed by him and held by appellees had terminated. Appellant also sought judgment against appellees for title to all production equipment left on the said land by appellees, alleging that appellees as lessees had not removed or sought to remove such equipment from the land within a reasonable time after production ceased and the lease terminated. The case was tried to the court without a jury and judgment was rendered for appellant removing cloud from title to his land but denying him judgment for title to the said equipment, which was awarded to appellees upon its being removed within 60 days after final judgment, from which latter part of the judgment appellant perfected his appeal. The sole issue to be determined is whether or not the trial court was justified in denying appellant judgment for title to the equipment in question consisting of 5½-inch casing in a well, tanks, surface lines and a pumping jack.

The record reveals that appellant owned the said land and had on August 7, 1940, executed a three-year mineral lease thereon to appellees which lease provided for the usual one-eighth royalty. The terms of the lease authorized the lessee to lay pipe lines, build tanks, power stations, structures and provide other equipment for the production and preservation of gas and oil. The said lease likewise contained the following provisions:

"If oil or gas shall be discovered or produced in paying quantities from any such well or wells drilled or being drilled at or after the lapse of 3 years, this lease shall continue in force so long as oil or gas be produced from the leased premises.

\*   \*   \*   \*   \*   \*

"Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

\*   \*   \*   \*   \*   \*

"Title to the minerals vested in grantee under this grant shall not end or revert to grantor until there is a complete, absolute and intentional abandonment by grantee of each and all of the purposes, expressed or implied, of this grant and every part and parcel of the premises described in this grant."

Thereafter on June 15, 1942, appellees completed the drilling of a producing well at a depth of 3,304 feet on the said land. It may also be observed that on August 10, 1942, a unitization agreement was executed between appellant and the owners of the mineral lease on another tract of land by the terms of which the two tracts were unitized. Upon the other tract there was production in paying quantities at the time of the trial of this action. The well drilled on appellant's land continued to produce oil in paying quantities until the early part of 1948 with a lesser production continuing until the latter part of 1948, after which the tubing and rods were pulled out of the well leaving the casing in the well and other equipment on the grounds, the total value of which was estimated to be $15,000.

The record reveals that appellee, John Fidel, and his wife, Louise Fidel, owned an interest in the original lease in question; that his wife died on December 29, 1945, leaving two minor children, namely, John Guy Fidel and Lou Dell Fidel, and no others; that appellee John Fidel, the father of the said minor children, was appointed soon thereafter as guardian of their person and estate; that on November 5, 1947, appellee John Fidel bought all of the remaining interest of the lease from the other parties and he and his said minor children thereafter owned the entire lease; and that appellee John Fidel was sued herein by appellant both individually and as guardian of the person and estate of the said minors.

Appellant filed this suit on August 10, 1950, alleging that the lease terminated in October of 1948 by reason of cessation of production, and that the title of the equipment remaining on the lease had been forfeited to appellant by appellees by reason of appellees' failure to remove the said equipment from the said land within a reasonable time after the lease terminated.

The evidence reveals that the last production from the well in question was 72 barrels run in December of 1948 and that negotiations were had and continued for several months thereafter between appellant and appellees to drill the said well deeper in an effort to continue production. Appellant testified that he, after production ceased, discussed the matter of drilling the said well deeper several times with a Mr. Fred Roland, appellees' agent, and that such negotiations continued until the fall of 1949.

Appellee John Fidel testified, in effect, that they had reasonable prospects of drilling the well in question deeper with a view of restoring production by using 4-inch pipe in connection with the 5½-inch pipe previously used; that he had since been looking constantly for the 4-inch insert pipe in order to drill the well deeper after having had negotiations with appellant through Mr. Roland to that effect but such pipe was scarce and hard to find; that the said well could have been easily drilled 1,000 or 1,200 feet deeper if they could have found the 4-inch pipe; that his inability to obtain 4-inch pipe during the period of time in question was the only reason he did not proceed with drilling the well deeper in an effort to continue production and that he did not pull the casing from the well and remove the equipment because of negotiations with appellant and the prospects of deepening the well and continuing production.

Appellant's witness, A. C. Parks, a disinterested producer, testified, in effect, that it would not take very long to remove the equipment from a lease after the same had terminated and a well thereon had been abandoned but the lessee and producer would usually stay thereon until he got a notice to leave if he had a $15,000 investment therein and was negotiating with the lessor or owner with a view of deepening the well for further production. He further testified as a man of experience in such matters that removing the equipment

971

from a lease under the conditions presented in the case at bar would depend much upon the existing circumstances and particularly if and when negotiations between the interested parties were current in an effort to deepen the well for further production and thus save a valuable investment.

It has been held in construing a provision in an oil and gas lease with reference to the right of removal of trade fixtures after termination of a lease that the failure to remove such trade fixtures within a reasonable time resulted in a forfeiture, making them a part of the realty and vesting the owner of the fee with title thereto. Terry v. Crosswy, Tex.Civ.App., 264 S.W. 718. But it has since been held with ample authority in support thereof in the case of Lewis v. Clark, Tex.Civ.App., 149 S.W.2d 244, 248 (writ dismissed, judgment correct), that:

> "* * * 'forfeitures are looked upon with disfavor by the courts, and that the party to a contract claiming the benefit of a forfeiture clause must clearly show that the contract has been breached by the other party in the particular manner providing for a forfeiture.' Gulf Production Co. v. Cruse, Tex.Com.App., 271 S.W. 886."

In that case the court also defined the term "reasonable time" as being:

> "* * * 'such length of time as may fairly and properly and reasonably be allowed or required, having regard to the nature of the act or duty and to the attending circumstances; that time which as rational men the parties to a contract ought to have understood each other to have in mind; that time which preserves to each party the rights and advantages he possesses and protects each party from losses that he ought not to suffer.' "

In applying the foregoing rules the court there further said:

> " 'That which constitutes a reasonable time is a question of fact or, at least, a mixed question of law and fact and depends upon the circumstances surrounding the case to which the principle is sought to be applied. What would be a reasonable time in one case might be wholly inadequate to shut off the rights of parties in a different case or under different circumstances. * * *' "

In that case the original lease was executed on January 21, 1936, for one year and as long thereafter as oil and gas were produced in paying quantities. Three producing wells were drilled upon the lease but by September 1, 1937, little or no production was being obtained. On February 4, 1939, lessee sought to remove the trade fixtures from the lease and was stopped until title to such fixtures could be established. Suit was filed and the case was tried to a jury which found that the trade fixtures were not removed from the lease within a reasonable time after the same had terminated and the trial court rendered judgment accordingly. Because of extenuating circumstances the appellate court applied the foregoing announced rules of law and reversed and rendered the trial court's judgment, denying appellee any recovery. Applying the same rules of law and the same logical reasoning applied in the Lewis-Clark case, it appears from the record presented here that appellees never at any time intended to forfeit their claim to the equipment in question and did not intend to abandon the well or lease without first trying to drill the well deeper, cause reproduction and thus save their investment in accordance with their negotiations had with appellant to that effect. In such event appellant's suit to recover the said equipment was prematurely filed and he should not have recovered judgment for title to the said equipment.

The case of Pearson v. Black, Tex.Civ. App., 120 S.W.2d 1075, 1079, was a suit to remove cloud from title and for title to drilling equipment alleged to have been left upon the grounds after abandonment. In that case a mineral lease was executed on August 18, 1911. A producing gas well was drilled on the lease in 1920, which well continued to produce until January 1, 1932. Tubing was pulled from the well thereafter on September 1, 1934. The other equip-

ment remained on the lease and the well stood idle until suit was filed on June 12, 1937, alleging abandonment on January 1, 1932. The case was tried to a jury which found that the production equipment on the lease had been abandoned prior to January 13, 1937, and judgment was accordingly rendered for the lessor or landowner by the trial court awarding him title to the said equipment. However the appellate court reversed and rendered that part of the judgment denying any recovery for the said equipment. The appellate court there said:

" 'In its general signification "abandonment" means the relinquishment of the possession of a thing by the owner with the intention of terminating his ownership, but without vesting it in any one else.' Shahan v. Northern Texas Traction Co., Tex.Civ.App., 266 S.W. 850, 852; 1 R.C.L. 2; 1 C.J. 5."

Following that statement the court held there was no evidence of probative force to show intentional abandonment, which intention was an essential element of abandonment.

A similar issue to the one here presented was discussed at length by the El Paso Court of Civil Appeals in the recent case of Cox v. Rhodes, Tex.Civ.App., 233 S.W. 2d 924. In that case production ceased on November 26, 1946, leaving production equipment on the lease valued at approximately $8,000. Negotiations continued thereafter between the interested parties to recondition the well in an effort to continue production therefrom. Thereafter suit was filed to determine ownership of the said equipment. Trial was had to a jury but the trial court withdrew the case from the jury when the evidence was heard and rendered judgment denying lessees any title to the said equipment holding, in effect, that lessees had forfeited their title to the said equipment by reason of their failure to remove the same from the lease within a reasonable time. By reason of the terms of the lease and the extenuating circumstances the appellate court reversed and remanded the cause holding there was a question of fact raised concerning forfeiture of title to the equipment by reason

of failure to remove it within a reasonable time. The court further stated that the matter of "reasonable time" was generally a question of fact or sometimes said to be a mixed question of law and fact and depended upon the circumstances of the particular case.

According to the record before us the interested parties, after production ceased, were negotiating the matter of drilling the well deeper in order to continue production. It was reasonable to assume that such negotiations contemplated leaving the equipment on the lease until a test for reproduction could be made or until appellant definitely terminated the purpose and intent of the negotiations. Appellees relied upon such negotiations and in order to accomplish the purpose they were endeavoring to find suitable pipe. The well had not been plugged and there was no showing that anybody had sought permission from the State Railroad Commission to plug the well. There is no showing that appellees were served with any notice from appellant that the negotiations had terminated and they must vacate or that appellant was claiming title to their production equipment left on the lease until this suit was filed. Both parties knew or should have known the production equipment in question was intended to be personal property and not a permanent fixture or a part of the realty because the terms of the lease contract made it such by authorizing its removal by lessee, which right the law gave lessee within a reasonable time after the lease terminated had the lease contract not so specified. Both parties knew or should have known there would be no forfeiture of equipment or abandonment of the lease without an expressed intention by appellees either in words or acts so to do within a reasonable length of time after production ceased because the terms of the lease contract provided in part that "Title to the minerals vested in grantee under this grant shall not end or revert to grantor until there is a complete, absolute and intentional abandonment by grantee of each and all of the purposes, expressed or implied, of this grant and every part and parcel of the premises described in this grant."

With a knowledge of all of these facts and extenuating circumstances it could hardly be presumed that appellees would, without any consideration moving to them, have voluntarily relinquished forever their right, title and claim to equipment valued at approximately $15,000 and thereby vested title to all of it in appellant. According to the record presented to us and under the authorities cited and others it is our opinion that the trial court was justified in denying appellant judgment for title to the equipment in question and in awarding it to appellees under the conditions therein stated. Appellant's points to the contrary are overruled and the judgment of the trial court is affirmed.