**W. K. MORGAN et ux., Appellants,**

v.

**Hewitt B. FOX, Appellee.**

**No. 1065.**

Court of Civil Appeals of Texas,
Corpus Christi.

April 29, 1976.

Rehearing Denied May 20, 1976.

J. G. Adami, Jr., Perkins, Davis, Oden & Warburton, Alice, for appellants.

Wm. G. Burnett, Burnett & Burnett, Sinton, for appellee.

## OPINION

BISSETT, Justice.

This is an appeal from a summary judgment in favor of Hewitt B. Fox in his suit to quiet title to an oil, gas, and mineral lease and to the oilfield equipment and personal property used in connection with the production of oil and gas from the land subject to the lease.

Suit was instituted by Hewitt B. Fox against W. K. Morgan and wife, Alma Morgan, on September 20, 1974. Plaintiff alleged: 1) that he was the owner of a certain oil, gas, and mineral leasehold estate, created by a lease executed by Jesse Cross, et al, as lessors, to William D. Johnson, as lessee, dated June 15, 1970, covering a certain 160 acre tract of land in San Patricio County, together with all oilfield equipment, personal property and fixtures located on said land; 2) that Jesse Cross, et ux, as grantors, executed and delivered to the defendants, as grantees, a certain deed dated March 8, 1974, covering the land in question, which deed contained a recitation that the property covered thereby is subject to the aforesaid oil, gas, and mineral lease; 3) that the recitation constituted notice to defendants that the land was subject to the lease, constituted a ratification of the lease, and constituted a binding, absolute and conclusive estoppel against defendants which prevented them from asserting that the land so conveyed to them was not subject to the lease; 4) that the defendants were asserting unfound claims of title to the lease and leasehold estate and all personal property on the land incidental to the lease which were adverse to plaintiff's title thereto. He prayed that he have judgment quieting his title thereto and that the cloud cast on his title by defendants' claims be removed.

Defendants, in addition to general and special denials, pled that the lease to William D. Johnson had terminated "due to non-production", and that they were the owners of the oilfield equipment located on the land. They also filed a cross-action against plaintiff, which was severed from the case by the trial court. The cross-action is not before us in this appeal.

Plaintiff filed a motion for summary judgment on March 11, 1975, which was contested by defendants. The motion after hearing thereon, was granted, and judgment was rendered on August 5, 1975 which quieted plaintiff's title to the oil, gas and mineral leasehold estate and to the oilfield equipment, personal property and fixtures on the land. Defendants have appealed.

Plaintiff, in his motion for summary judgment, stated several specific grounds therefor. They were: 1) the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, establish conclusively and as a matter of law that plaintiff is the owner of the oil, gas, and mineral lease involved, and that it is a valid lease; 2) that he is the owner of the oilfield equipment located on the land covered by the lease and was in possession of such property at the time defendants asserted a claim thereto; 3) defendants ratified the lease and are estopped to deny that the lease had terminated; and 4) defendants repudiated the lease.

Defendants, in their reply to plaintiff's motion, asserted that there were material questions of fact concerning: 1) whether or not the mineral lessee under a prior oil and gas lease abandoned the lease and all oilfield equipment thereon about December, 1969; 2) whether or not title to the oilfield equipment passed to Jesse Cross because of the failure of the prior mineral lessee to remove said oilfield equipment within a reasonable time after the expiration of the prior lease; and 3) whether or not there was any production of oil and gas in paying quantities at the time of suit.

Defendants, in their points of error, contend that the trial court erred: 1) in holding, as a matter of law, that plaintiff "was the owner of certain oilfield personal property located on the lease in question"; 2) in holding, as a matter of law, that the lease "is being perpetuated by production"; and 3) in quieting title to the "lease and the oilfield equipment and fixtures located thereon without a conventional trial on the merits".

Plaintiff, in his counterpoints, states that the judgment should be affirmed because: 1) the judgment may have been based upon a ground not saved for appellate review; 2) the summary judgment evidence established conclusively that defendants ratified and subsequently repudiated the lease; 3) the summary judgment evidence estab-

lished conclusively that the lease was producing in paying quantities, and that plaintiff had title to the oilfield equipment located thereon.

Plaintiff supported his motion for summary judgment by the answers to interrogatories and admissions on file, and by affidavits from himself, William D. Johnson, and Yvonne Orrick, together with the several exhibits attached to and made part of the affidavits of himself and of Johnson. Defendants supported their reply to the motion with affidavits from Jesse Cross, W. L. Roots, Jr., and from the defendant W. K. Morgan, together with certain exhibits attached to the Cross and Morgan affidavits.

It is admitted by defendants in their brief that Jesse Cross is the common source of title to the mineral leasehold estate here involved, and that the question for determination as to the validity of the lease is whether or not there was production of minerals in paying quantities that perpetuated the lease. Insofar as the oilfield equipment is concerned, defendants' claim that the question to be resolved is whether a prior mineral lessee abandoned the equipment after the termination of his lease, or alternatively, whether such prior lessee failed to remove the equipment within a reasonable time after the expiration of the prior lease.

The facts related in this and in the next succeeding four paragraphs were conclusively established by summary judgment evidence. On March 30, 1934, an oil, gas, and mineral lease was executed by Roy L. Talbert, as lessor, to R. R. James, as lessee, covering the land here involved. This lease is hereinafter called "the prior lease". Production was established and certain items of oilfield equipment were installed and placed on the premises, some of which remained thereon at all times pertinent to this suit. The lease terminated in December, 1969. Orion Oil Company and Huisache Operating Company, hereinafter referred to as the "1969 mineral lessee", prior to December, 1969, acquired the mineral leasehold estate and all oilfield equipment then located on the land and used to produce oil or gas therefrom.

On June 15, 1970, Jesse Cross, et al, the then owner of the 160 acre tract of land, as lessor, executed an oil, gas, and mineral lease to William D. Johnson, as lessee, covering the land, which, among other provisions, provided for: a primary term of 3 years "and as long thereafter as oil, gas, or other mineral is produced from said land hereunder"; delay rentals of $800.00 per year; reworking or additional drilling operations within 60 days following a cessation of production; and the right to assign the lease. This lease is hereinafter called the "Johnson lease".

On March 1, 1971, the 1969 mineral lessee, by a bill of sale that warranted the title, sold and delivered all of the oilfield equipment and personal property located on the land to the said William D. Johnson. Delay rentals were paid by Johnson for the years commencing June 15, 1971 and June 15, 1972. Johnson, by an instrument executed on May 14, 1973 and denominated "Assignment of Oil and Gas Lease and Bill of Sale", assigned "all of the leasehold estate and working interest and rights of the original lessee in and to that certain Oil and Gas Lease dated June 15, 1970, by and between Jesse Cross, et al, as Lessor, and William D. Johnson, as "Lessee", to plaintiff; and did "bargain, sell and deliver all of his right, title and interest in and to all personal property used, now located on said premises or obtained in connection therewith to the said assignee, his heirs, successors and assigns". The assignment and bill of sale contained a covenant of general warranty.

Jesse Cross, et ux, conveyed the land to defendants by general warranty deed, dated March 8, 1974. The deed recited that it was "Subject to Oil, Gas and Mineral Lease dated 15 June 1970 from Jesse Cross, et ux, to William D. Johnson . . ." On March 27, 1974, Jesse Cross, et ux, by a bill of sale which contained a covenant of general warranty, sold to defendants all their "right, title and interest in and to any personal properties located in, on, over, or under" the land here involved. On June 24,

1974, the 1969 mineral lessee quitclaimed to defendants all its right, title and interest in the personal property on the land "in connection with an Oil, Gas and Mineral Lease . . . from Roy L. Talbert, et al, to R. R. James, as Lessee, and dated March 30, 1934". Jesse Cross, in his affidavit, stated that he was paid royalties by Johnson in the amount of $324.66 on June 14, 1973, and was paid $154.38 as royalties, by plaintiff on July 5, 1974.

W. L. Roots, Jr. executed an affidavit on January 27, 1971, wherein he said: "there has been no production of oil, gas or other minerals from said land since December 31, 1969. There has been no drilling, mining, reworking or other operations conducted on the land in search of production of oil, gas or other minerals since December 31, 1969".

In addition to the facts stated in the five paragraphs immediately preceding this paragraph, despite defendants' contention to the contrary, there is other summary judgment evidence that is also undisputed. First, Yvonne Orrick, plaintiff's secretary since prior to March, 1974, said in her affidavit that in March or early April, 1974, the defendant W. K. Morgan came to plaintiff's office; that plaintiff was not in at that time; that Morgan told her that the lease had expired because of non-production, and that he wanted a release of the "lease held by Mr. Fox"; that she told him that the lease was still in effect because "we had been producing oil from the lease each month, and had made periodic sales of the oil to the Permian Corporation"; that she showed him office copies of "the reports filed with the Railroad Commission", 2) plaintiff's gauger's reports which showed the days the well produced, 3) the daily production figures, 4) the days the well was shut in, 5) and the statements of "crude oil runs furnished us by the Permian Corporation dated February, 1974, showing 86.42 barrels of oil sold". Second, plaintiff, in his affidavit, said that "shortly after W. K. Morgan's visit to my office, and conversation with my secretary, Mrs. Orrick, as is described in her affidavit, he called me at my home early one morning and repeated his demand for a release of the lease", and that in "May or June, 1974, the defendant came by my office and advised me not only that my lease had terminated but, in addition, that he claimed ownership of the oilfield personal property located on the lease". Plaintiff attached to his affidavit copies of the production reports which he timely filed with the Railroad Commission for the months May, 1973 through November, 1974. Those reports showed a cumulative production of 455 barrels of oil and production of oil for each month except for the months of May and September, 1973. Plaintiff also attached to his affidavit copies of his office records which showed in detail the expenses incurred by him in his leasehold operations. He further stated the dates that the oil which was produced from the lease was sold.

None of the Railroad Commission Reports, the statements concerning the sales of oil produced from the lease, the leasehold expenses as reflected by plaintiff's books, or the statements made by the defendant W. K. Morgan to plaintiff and to Yvonne Orrick, at the times stated by them, concerning the termination of the lease were disputed or challenged in any of the affidavits attached to their reply to plaintiff's motion for summary judgment. Morgan, in his affidavit, admitted that he and plaintiff "made each other aware of our respective claims on such lease"; he did not, however, mention the date when the exchange of claims occurred.

■ The judgment does not specify any particular reason or ground for the granting of plaintiff's motion. It may have been based upon any or all of the specific grounds stated by plaintiff in his motion. Among such grounds is the ratification of the Johnson lease because of the acceptance by defendants of the deed which contained the recitation that the conveyance was "subject to oil, gas and mineral lease dated June 15, 1970 from Jesse Cross et ux to William D. Johnson". Defendants, by the acceptance of the deed with the above-quoted recitation therein, ratified the Johnson lease and are estopped to challenge the

validity of the lease as of March 8, 1974 and all times prior thereto. *Greene v. White,* 137 Tex. 361, 153 S.W.2d 575 (1941); *Hastings v. Pichinson,* 370 S.W.2d 1 (Tex.Civ. App.—San Antonio 1963, no writ). Since the judgment may have been based upon ratification, it must stand as it was not specifically challenged by the defendants on that ground; furthermore, there is no general assignment that the trial court erred in granting summary judgment. *Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119 (Tex.Sup.1970).

No one disputes the fact that the Johnson lease was a valid lease on the date of its execution and remained in full force and effect until June 15, 1973 by the payment of delay rentals. It is undisputed that this lease was duly assigned by Johnson to plaintiff on May 14, 1973. Since defendants ratified the lease on March 8, 1974, the question of whether there was any production of oil and gas from the land covered by the lease from June 15, 1973 to March 8, 1974 is immaterial. *Hastings v. Pinchinson,* supra. Unquestionably, defendants repudiated the lease in March or early April, 1974. The statements to that effect made by Yvonne Orrick in her affidavit, which were not disputed by defendants, are sufficient to establish such a repudiation as a matter of law.

The consequences of the ratification of the Johnson lease, and the subsequent repudiation thereof, is that the ratification gave the lease new life, if it was in fact lifeless, and the later repudiation thereof relieved plaintiff from any obligation to conduct any operations, drilling, re-working, or otherwise, on said land in order to maintain the lease in force pending the judicial determination of the controversy between plaintiff and defendants over the validity of the lease. *Kothmann v. Boley,* 158 Tex. 56, 308 S.W.2d 1 (1957).

The lease contained a provision which provided, in part:

".  .  . if after the discovery of oil or gas the production thereof should cease from any cause, this lease shall not termi-nate if Lessee commences additional drilling or re-working operations within sixty (60) days thereafter  .  .  ."

Therefore, since it is shown as a matter of law that the lease was a valid lease as of March 8, 1974, the effect of the 60-day re-working provision, above quoted, extended the lease until May 8, 1974, even if there had been no production during that period of time. The summary judgment proof shows that the defendants repudiated the lease prior to May 8, 1974. Be that as it may, the record further conclusively shows that the lease was maintained by actual production of oil in paying quantities at all times pertinent to this suit.

The term "paying quantities" means that the oil or gas produced from the lease must be sufficient to pay the lessee a profit, even small, over operating and marketing expenses, excluding the cost of drilling or re-working a well, but including all payments of all royalty and overriding royalty interests which are excluded from the total income attributable to the working interest owner. *Garcia v. King,* 139 Tex. 578, 164 S.W.2d 509 (1942). Absent any other provisions in the lease which will keep the lease alive, in order that there be production in paying quantities, there must be an available market. *Gulf Oil Corp. v. Reid,* 161 Tex. 51, 337 S.W.2d 267 (1960). The question of whether an oil or gas well is producing in paying quantities is ordinarily one of fact, but where it is shown that a small profit has been realized from the operation of the well, it may be found as a matter of law that the well is producing in paying quantities. *Skelly Oil Co. v. Archer,* 163 Tex. 336, 356 S.W.2d 774, 783 (1962); *Union Oil Co. of California v. Ogden,* 278 S.W.2d 246 (Tex.Civ.App.—El Paso 1955, writ ref'd n. r. e.).

The fact that there was an available market at all times for the oil produced from the Johnson lease is undisputed.

Plaintiff further stated in his affidavit that he did not sell the oil each month as it was produced, but did so when he had "accumulated enough for a load to be hauled off"; he sold "four loads" of oil from Au-

gust, 1973 through November, 1974 for a net of $2,772.88. According to plaintiff's office records, copies of which were attached to his affidavit, the expenses incurred in operating the lease from July 31, 1973 through September 11, 1974 amounted to $1,377.37. The working interest owned by plaintiff, after excluding all outstanding royalties and overriding royalties is 78.125% of the total production. The sum of $2,166.31 accrued to the working interest. Plaintiff's net profit from May, 1973 through November, 1974 was $788.94.

As already stated, plaintiff acquired the Johnson lease on May 14, 1973; at that time, the payment of the $800.00 delay rental on June 15, 1972, constituted the lease a valid lease, irrespective of production, until June 15, 1973; the lease was repudiated in March or early April, 1974 and again in May or June, 1974; suit was filed on September 20, 1974. The lease produced 436 barrels of oil from May, 1973 through September, 1974, which, after deducting severance taxes, brought a net of $2,582.88 to the ⅞ths production. Plaintiff's share thereof (78.125% WI) was $2,017.87. The expenses of operation amounted to $1,377.37. The profit realized by plaintiff for that period of time was $640.50.

From March, 1974, the month that defendants bought the land covered by the lease, through September, 1974, the lease produced a total of 170 barrels of oil. Sales of the oil produced during that period of time were made in April and in November, 1974. After deducting all severance taxes, the oil produced from the lease, some of which was not sold until after suit was filed, had a market value of approximately $1,633.00, and eventually sold for at least that sum of money. Plaintiff's working interest entitled him to about $1,283.00 thereof; his operating expenses from March through September, 1974, totalled $274.31; his profit for the period March–September, 1974, was about $1,008.69.

■ The lease produced oil each month following the date that defendants purchased the land from Jesse Cross, et al.

The lease produced a profit, though small. It is established by the summary judgment proof that the lease, as a matter of law, produced oil in paying quantities at all times from May 14, 1973, when it was assigned to plaintiff by Johnson, to the date suit was filed. Defendants' contention that there was a fact question of whether there was production in paying quantities at the time material to this suit cannot be sustained.

■ With respect to the oilfield equipment on the lease, plaintiff's title thereto is deraigned by and through the bills of sale from "the 1969 mineral lessee", dated March 1, 1971 to William D. Johnson, and from Johnson to plaintiff, dated May 14, 1973. Defendants claim of title under the quitclaim from "the 1969 mineral lessee", dated June 24, 1974, which was after the date that defendants repudiated the lease and notified plaintiff that they were claiming title to such equipment, lacks merit. "The 1969 mineral lessee", having previously sold the equipment to Johnson, plaintiff's predecessor in title, on March 1, 1971, had no title to or interest in the equipment on June 24, 1974, the date of the quitclaim by such lessee to defendants. With respect to a sale of personal property, it is a settled rule that a buyer acquires no better title than that owned by the seller. 1 Tex. Jur.2d, Sales, § 149. Since "the 1969 mineral lessee" had no title to the equipment from and after March 1, 1971, it follows that defendants did not acquire any title to or interest in the equipment under the bill of sale executed on June 24, 1974.

■ However, defendants further contend that there are fact issues as to whether the prior owners lost title to the equipment by abandoning it, or by failing to remove it within a reasonable time after the expiration of the prior lease. Those claims are affirmative matters upon which the defendants would have the burden of proof, since the effect thereof is to admit that the prior owners owned the equipment but that it is sought to avoid the effect of such an admission by pleading and proving that their title was lost to them by aban-

doning the equipment, or failing to remove it within a reasonable time after the lease terminated. See 1 Tex.Jur.2d, Abandonment, § 10; Rule 94, T.R.C.P.

·In *Gulf, Colorado & Santa Fe Railway Co. v. McBride*, 159 Tex. 442, 322 S.W.2d 492, 500 (1958), it was held:

"Where the plaintiff moves for summary judgment in an action in which the defendant has pleaded an affirmative defense, he is entitled to have his summary judgment if he demonstrates by evidence that there is no material factual issue upon the elements of his claim, unless his opponent comes forward with a showing that there is such a disputed fact issue upon the affirmative defense.

Lemond & Kreager, The Scope of Pleading as Proof in Summary Judgment Procedure, 30 Tex.Law Rev., pp. 613–622."

Here, plaintiff has demonstrated by his summary judgment proof that there are no material factual issues as to the elements of his claim of title to both the lease and the oilfield equipment located thereon.

Defendants in their summary judgment proof, failed to raise an issue of fact as to abandonment, and, specifically, they produced no evidence that either plaintiff or any of his predecessors in title ever intended to abandon the oilfield equipment on the lease. Title to such equipment in "the 1969 mineral lessee", as of December, 1969, when the prior oil and gas lease terminated, was not disputed by defendants.

▮ It is settled law that an essential element of abandonment is an intention to abandon, which must be established affirmatively by facts, and that non-use and the passage of time alone do not constitute an abandonment of vested rights. *Adams v. Rowles*, 149 Tex. 52, 228 S.W.2d 849 (1950); *Dallas County v. Miller*, 140 Tex. 242, 166 S.W.2d 922 (1942, opinion adopted). This Court, in *Strauch v. Coastal States Crude Gathering Co.*, 424 S.W.2d 677, 683 (Tex.Civ.App.—Corpus Christi 1968, writ dism'd), held that non-use of an easement for a period of 22 years did not raise a fact issue as to abandonment or an intention to abandon the easement. The case of *City of*

*Anson v. Arnett*, 250 S.W.2d 450 (Tex.Civ. App.—Eastland 1952, writ ref'd n. r. e.), held that non-use for a period of 6 years, without more, did not raise a fact issue as to abandonment. · It was held in *Pearson v. Black*, 120 S.W.2d 1075 (Tex.Civ.App.— Eastland 1938, no writ) that non-use of oilfield equipment for a period of 5½ years, as a matter of law, was not evidence of abandonment.

▮ Furthermore, even if defendants' summary judgment evidence had raised a fact issue for determination with respect to abandonment of the oilfield equipment, there is no pleading or proof that either defendants or their predecessors in title to the land ever reduced such equipment to possession after its abandonment, if any.

Plaintiff was in possession of the equipment, and was claiming under a bill of sale covering such equipment, on the date that defendants bought the land, which bill of sale was prior in time to defendants' bill of sale, to the same equipment. Nor did defendants produce any summary judgment proof that raised any issue as to what would have been a reasonable time which passed after the prior lease terminated.

▮ Title to abandoned personal property vests in the first person who reduces it to possession. *Gregg v. Caldwell-Guadalupe Pick-up Stations*, 286 S.W. 1083 (Tex.Comm'n App.1926); *Pearson v. Black*, supra. In order for defendants to acquire title to the oilfield equipment on the ground that such abandoned equipment became their property because the lessee did not remove it within a reasonable time after expiration of the lease, it was incumbent on them "to allege and prove what would be a reasonable time under the circumstances of the case." *Meers v. Frick-Reid Supply Corp.*, 127 S.W.2d 493 (Tex.Civ.App.— Amarillo 1939, writ dism'd, judg. cor.). Defendants did neither in this case.

▮ It is conclusively shown by summary judgment proof: the prior lease terminated by cessation of production in December, 1969; a new lease was executed by

Jesse Cross, et al, as lessor, to William D. Johnson, as lessee, on June 15, 1970, which was for a primary term of 3 years; Johnson purchased the equipment from the prior owners on March 1, 1971, paid delay rentals for the years commencing on June 15, 1971 and June 15, 1972, respectively, and produced enough oil to pay Cross $324.66 as royalties on June 14, 1973; plaintiff paid Cross $154.38 as royalties on July 5, 1974 (which was after the sale of the land to defendants); Johnson sold the equipment (and lease) to plaintiff on May 14, 1973. These facts were not questioned by defendants in the summary judgment evidence produced by them in their reply to plaintiff's motion for summary judgment. The fact that there were no records in the office of the Railroad Commission which authorized plaintiff to store oil produced from the leased premises off of such premises is not, of itself, evidence that the subject lease did not produce oil during the interval in question. The non-production affidavit of W. L. Roots, Jr., and the conclusions and opinions expressed by Cross and W. K. Morgan in their affidavits, do not separately or collectively, constitute summary judgment proof which supports any of the contentions made by defendants. There is no evidence of any statement or overt act by the 1969 mineral lessee or by Johnson which would indicate an intention to abandon the oilfield equipment. The failure to remove such equipment after December, 1969 under the circumstances of this case does not raise an inference of an intention of any mineral lessee to abandon the oilfield equipment.

The judgment of the trial court is correct. It is established, as a matter of law, that the Johnson lease was a valid, subsisting oil, gas and mineral lease on the subject land, that plaintiff was the owner of that lease from May 14, 1973 up to and including the date judgment was rendered, and that the oilfield equipment, initially placed on the land by R. R. James (the prior lessee) and those claiming under him was owned by plaintiff on August 5, 1975, when the judgment which quieted plaintiff's title to the lease and the oilfield equipment thereon was rendered. We have carefully considered all of the defendants' points of error, and they are all overruled.

The judgment of the trial court is AFFIRMED.

NYE, C. J., not participating.