Lloyd W. Davidson, State's Atty., of Austin, for the State.

CHRISTIAN, Judge.

The offense is selling whisky in a dry area; the punishment, a fine of $100 and confinement in jail for thirty days.

The statement of facts does not appear to have been filed in the trial court. Hence it is not entitled to consideration.

We are unable to appraise the bills of exception in the absence of a statement of facts.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## PEARSON et al. v. BLACK et al.
### No. 1838.

Court of Civil Appeals of Texas. Eastland.
Sept. 30, 1938.

Rehearing Denied Nov. 4, 1938.

Lyndsay D. Hawkins, of Breckenridge, and Earl Conner, Sr., of Eastland, for appellants.

Ben J. Dean and Floyd Jones, both of Breckenridge, for appellees.

FUNDERBURK, Justice.

In this suit Wm. Black and others asserted against L. R. Pearson and others a number of alternative claims; but with reference to the judgment rendered, and the grounds upon which it is challenged by the appellants on the one hand, and sought to be sustained by the appellees on the other, the suit may be said to be one whereby plaintiffs sought to remove a cloud from their title to certain described land, being that covered by an assignment of an oil and gas lease; to recover title and possession of a drilling rig and all personal property upon said land; and to recover of defendants, L. R. Pearson and Pete Jensen, the value of certain 5–3/16 inch casing drawn by them from a well on said land and appropriated to their use.

In plaintiffs' pleadings it was alleged, in effect, that plaintiffs owned the land in fee simple, except an undescribed part of the minerals therein, and that on August 18, 1911 an oil and gas lease was executed by plaintiffs, or their predecessors in title, to the Texas Company, a copy of which, referred to in the pleadings, was set out as an exhibit. A provision of said lease was alleged to be that it was binding upon the representatives and assigns of the parties thereto. It was alleged that said lease was on January 6, 1920 assigned by the Texas Company to J. W. Link insofar as it covered a certain survey, and by the latter re-assigned to Link Oil Corporation. It was alleged that in 1920 Link Oil Corporation drilled a well on said portion of the lease; placed therein a large number of joints of casing, built a rig and discovered gas, which the well continued to produce until about January 1, 1932, since which time the open well has stood idle on plaintiffs' land with none of defendants in charge of the same and "has been abandoned by the defendant Link Oil Corporation"; that about September 1, 1934, the tubing in said well was pulled by the Texas Pacific Coal & Oil Company to whom it

belonged; that from January 1, 1932 to the filing of plaintiffs' amended pleading (June 12, 1937) "no attempt was made by the defendant Link Oil Corporation, or anyone else, to produce oil or gas from said well, or to do anything calculated or intended to produce oil or gas therefrom, and that said lease as to said land, said well and all personal property therein, was abandoned." It was further alleged that about June 1, 1935, the rig was blown down; no attempt was made to re-erect or repair it, or to place any pumping machinery or anything else in the well, or to do anything calculated to produce oil or gas, or protect the oil or gas structure in or under said land.

From said alleged facts the conclusion was further averred that "the said defendant Link Oil Corporation abandoned said property and that under the law the same became the property of the land owners, the plaintiffs herein, upon the abandonment." Relative to abandonment, it was further alleged, alternatively to allegations of forfeiture and by way of repetition, in part, that "the Link Oil Corporation, on or about January 1, 1932, abandoned said lease and abandoned said personal property and went away and left it * * * and did not exercise any act of ownership or control over said property or pay the taxes thereon, or do anything to evince an assertion of any right or interest therein until shortly prior to the bringing of this suit when * * * Link Oil Corporation attempted to quit claim their interest in and to said personal property located on said lease to the defendant L. R. Pearson." Purportedly as an alternative to the claim that the lease was abandoned it was alleged that said "Link Oil Corporation did abandon the personal property located on said lease as more fully set forth hereinabove * * * and that in all events said personal property including the casing in the hole and the rig timbers blown down about the hole is and was the property of these plaintiffs at the time said defendant Pearson attempted to remove the same and did move a part thereof on or about the 28th day of March, A. D. 1937."

Then follow allegations to the effect that said Pearson and Jensen entered upon the land, removed and carried away 3072 feet of casing for the alleged value of which judgment was prayed.

The defendant Link Oil Corporation entered a disclaimer. The defendants L. R. Pearson and Pete Jensen, in addition to defensive pleas, filed a cross-action claiming damages for the wrongful suing out of a writ of injunction, restraining them from pulling and removing the remainder of the casing in the well.

The jury, by their verdict, found that the lease and the personal property had been abandoned prior to January 13, 1937; that 3064 feet of 5-3/16 inch casing had been removed from the well which was of the value of 40 cents per foot. The issue of damages tendered by appellants' cross-action was submitted conditionally and in accordance with the conditions of submission was not answered. The court accordingly gave judgment for the plaintiffs for the land and personal property, removing the cloud from the title thereto cast by the abandoned lease, and for $1225.60, the value of the casing removed. The defendants Pearson and Jensen have appealed.

██ The deed or lease (so-called) conveying the minerals contained a provision that "for every well drilled there shall in all events be secure from forfeiture an area of 200 feet square with the well in the center, together with 160 acres of land adjoining." We are of opinion that this provision is immaterial to any question presented by the appeal. In their brief, appellees say that "This was not a suit for forfeiture, but was abandonment on the part of the Link Oil Corporation. * * * If the Link Oil Corporation did abandon this property the appellees are entitled to this property, but if the Link Oil Corporation did not abandon this property, then the appellees are certainly not entitled to recover."

It is our view that if the title of the grantee to "all of the oil, gas, coal and other minerals in and under" said land, which the deed or lease purported to grant, was subject to loss or extinguishment by abandonment (as contradistinguished from forfeiture or termination of the estate by a limitation expressed in the conveyance), and same was in fact abandoned; the above quoted clause of the lease would constitute no obstacle to such loss or extinguishment of title by abandonment.

One provision of said lease of Black and others to the Texas Company, assigned by the latter to Link, through whom appellants claim insofar as it covers the particular tract of land in question, provided that "in case the grantor, or the successors or assigns of such, should sink a well or

shaft and discover either oil, gas or other minerals within the limits of time, or the extension of such, as herein provided for, then this conveyance shall be in full force and effect for twenty years from the discovery of said product, and as much longer as such minerals are produced in paying quantities." Another provision was the grant of an easement in the land vesting in the grantee "the exclusive right of ingress and egress at all times for the purpose of drilling, mining and operating for oil, gas, coal and other minerals, and for conducting all operations and the erection of appliances and structures in regard thereto and for laying all pipe lines necessary for the production, mining, storing and transportation of oil, gas and other minerals (with privilege of renewing and removing all such structures at will) * * * ."

■ It is urged by appellants that these provisions, under the undisputed evidence, as a matter of law, establish the right of appellants to draw and appropriate the casing in the well. It was shown without dispute that at the time of trial oil and gas was still being produced from and under the terms of the lease. It seems to have been assumed by appellees that the ownership by Link Oil Corporation of the lease insofar only as it covered a particular part of all the land included in the lease, from which minerals, although previously produced were not being produced for sometime before the suit was filed, had the effect of segregating the lease of such particular land from the lease of the other land originally embraced therein. We can see no warrant for that assumption. The lease was a unity. Its assignability was unrestricted by any provision in the instrument. We think the unqualified right of assignment included the right to assign, either in whole or in part. The assignee of a part had precisely the rights as to such part that the original lessee would have had if there had been no assignment. If it were intended otherwise the parties should, and presumably would have, so provided by the terms of the lease.

■ Under the undisputed facts it would never be contended that the lease from plaintiff Wm. Black and others to the Texas Company dated August 18, 1911 conveying 10,255 acres more or less had been wholly abandoned during a time when it was being operated with a number of producing wells thereon. But that lease is the only one involved. It is the lease owned by the appellants. It grants to them the oil, gas, coal and other minerals in the particular land from which plaintiffs by their suit seek to remove the lease as a cloud on their title. It grants to them an easement to enter upon said land and remove at will and appropriate the casing or other personal property belonging to the lessee. Appellants' rights in the particular land and personal property were the same as if they were the assignees of all interest in the lease. The limitation in the lease that it should continue in force as long as any of the minerals were produced from same was in no manner modified or restricted by the assignment to Link. The undisputed facts do establish, we think, as contended by appellants, that they lost no rights by abandonment.

■ Assuming, as said before, that title to the oil, gas, coal and other minerals granted by the instrument and being a freehold estate in land—a determinable fee estate—could be lost or extinguished by simple abandonment, and that the title would as a consequence revest in the former owners of the land, it does not follow, in our opinion, that title to the casing would by abandonment ipso facto vest in such former owners of the land. Under the lease, such personal property was not a part of the land. The terms of the instrument itself had the legal effect of providing that it was not. There was a contract right to remove such personal property at will which would not have been affected by an abandonment of the lease. "In its general signification 'abandonment' means the relinquishment of the possession of a thing by the owner with the intention of terminating his ownership, but without vesting it in any one else." Shahan et al. v. Northern Texas Traction Co., Tex. Civ.App., 266 S.W. 850, 852; 1 R.C.L. 2; 1 C.J. 5. If the casing had been in fact abandoned there was neither pleading nor evidence to show that appellants were not the first persons to take actual possession of same, or that the plaintiffs were. Regardless of any prior right or title, if the casing was abandoned and the appellants were the first to take actual possession of same they thereby had a better title thereto than appellees were shown to have had. We know of no rule or principle of law to the effect that abandoned personal property becomes the property of him upon whose land it happens to be left.

' A good many of appellants' other assignments of error are believed to be without merit. Others seem to us to present material errors. It will be unnecessary to enter into any discussion of those we think are without merit, and but a very brief treatment will be accorded some of those which we think should be sustained.

There was, we think, a total absence of evidence of any probative force to show any intention of the Link Oil Corporation to abandon the lease or personal property. Such intention was an essential element of abandonment.

Officers of the corporation actually in charge of its affairs were entitled to testify as to the intention of the corporation. 1 Tex.Jur. p. 11, sec. 11; Lawson v. Port Arthur etc., Co., Tex.Civ.App., 185 S.W. 600; Jasper County Lumber Co. v. Smith, Tex.Civ.App., 91 S.W.2d 834.

The manner of submitting, as issues, questions to the jury regarding abandonment was, we think, subject to the objections made. The abandonment was alleged to have occurred about January 1, 1932. As to that time there was conclusive rebuttal evidence to show that rentals had been paid and accepted up to January 16, 1935 upon the very well upon the land in suit. While no objection seems to have been made to splitting a single issue and submitting it as two; that is, first, whether there was an abandonment, and, second, if so, did it take place prior to January 13, 1937, the objection that the issue should have been confined to the terms of the pleading was, we think, well taken. Assuming that the issue should have been submitted it should have been in form substantially thus: "Do you find from a preponderance of the evidence that on or about January 1, 1932, Link Oil Corporation abandoned the lease owned by said company on Survey No. 2059, TE&L Survey in Stephens County?" .

The issue should not have been so stated as to refer the jury to the pleading to ascertain any of the subject matter of the issue. Speer's Law of Special Issues, p. 238, sec. 181.

In view of the disposition to be made of the appeal and the importance of the question we shall not take the time now necessary to enable us to express an opinion as to whether the word "abandonment" is such a legal term as under R.S.1925, Art. 2189, requires definition or explanation. It was held to be such in Jasper County Lumber Co. v. Smith, Tex.Civ.App., 91 S.W. 2d 834.

The issue of damages sustained as the result of wrongful injunction, assuming that it was an issue which under all the circumstances was required to be submitted, should, we think, have been submitted without the conditions which the court attached. These conditions were: "If you have answered special issues Nos. 1 and 3 'No' or if you have answered special issues No. 1 'yes', special issue No. 3 'no' and special issue No. 5 'no' and in that event only, then answer special issue No. 9." Special issue No. 9 thus conditionally submitted, if only a component part of the cause of action asserted in appellants' cross-action, was none-the-less certainly not one which would have been concluded by a finding upon any other issue constituting also a component part of such cause of action. Each and all of the issues, upon the answers to which in a particular way the submission of special issue No. 9 was conditioned, related to a cause of action or to causes of action asserted by plaintiffs. Thus an entire cause of action asserted by appellants was concluded upon findings of the jury not upon component elements thereof, but upon issues relating exclusively to the cause of action or causes of action asserted by plaintiffs. Under such circumstances, we think, a conditional submission is not proper. For an interesting discussion of this question by Mr. J. L. Goggans, Jr., see Texas Law Review, Vol. XVI, p. 383.

Being of the opinion that as to the cause of action asserted by the appellees against the appellants, the trial court should have instructed a verdict for the appellants and that the judgment in that respect should be reversed, except insofar as Link Oil Corporation was dismissed upon its disclaimer which should be affirmed, and being further of opinion that judgment should be rendered in favor of appellants that appellees take nothing by their suit and appellants should go hence without day, and being further of the opinion that as to the judgment upon the cross-action by appellants against appellees that it should be reversed and remanded for another trial upon such cross-action, it is accordingly so ordered.