**LINGLEVILLE INDEPENDENT
SCHOOL DISTRICT, et al.,
Appellants,**

v.

**VALERO TRANSMISSION
COMPANY, Appellee.**

No. 11–88–180–CV.

Court of Appeals of Texas,
Eastland.

Jan. 12, 1989.

Rehearing Denied Feb. 2, 1989.

Kent M. Rider, Susan D. Desmarais, Joseph, Rider & Cameron, P.C., Austin, for appellants.

William Ikard, Powell, Popp & Ikard, Austin, for appellee.

## OPINION

McCLOUD, Chief Justice.

The issue is whether a 36–inch–diameter gas transmission pipeline which is buried below "normal plow depth" is personal or real property for ad valorem tax purposes.

The trial court found that the pipeline was personal property and that, since the taxing units had failed to bring their suit within four years, the claim for taxes was barred. The taxing units, Lingleville Independent School District and Bluff Dale Independent School District, appeal. We affirm.

The pipeline, which is owned by Valero Transmission Company, is known as the North Texas Line and is approximately 390 miles long. Valero is a gas pipeline company which gathers and transmits natural gas to primarily intrastate markets. The North Texas Line is interconnected with other major pipelines giving Valero significant ability to gather, transmit, and market natural gas.

The trial court found that the pipeline owned by Valero has been annexed to the land through burial below plow depth, that the pipeline was placed on the property for purposes of trade, and that Valero Transmission Company did not intend to make the 36 inch pipeline a permanent accession to the land.

The taxing units first argue that there is no evidence or, alternatively, factually insufficient evidence to support the trial court's conclusion that the pipeline is personal property.

In considering the taxing units' no evidence challenge, we will consider only the evidence and inferences supporting the trial court's finding and disregard all contrary evidence and inferences. *Stafford v. Stafford,* 726 S.W.2d 14 (Tex.1987). We will consider all the evidence, both in support of and contrary to the finding, to determine if the evidence is factually insufficient. *Pool v. Ford Motor Company,* 715 S.W.2d 629 (Tex.1986).

The taxing units contend that the pipeline is a fixture and that it has become a permanent part of the realty. The four-year limitation period does not apply to real property. To determine if personal property has become a fixture, the Court in *Logan v. Mullis,* 686 S.W.2d 605 (Tex.1985), stated:

> Three factors are relevant in determining whether personalty has become a fixture, that is, a permanent part of the realty to which it is affixed: (1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the article to the use or purpose of the real-

ty; and (3) the intention of the party who annexed the chattel to the realty. *O'Neal v. Quilter*, 111 Tex. 345, 234 S.W. 528, 529 (1921); *Fenlon v. Jaffee*, 553 S.W.2d 422, 428 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). The third criterion dealing with intention is preeminent, whereas the first and second criteria constitute evidence of intention.

The taxing units specifically attack the trial court's finding that Valero did not intend to make the 36 inch pipeline a permanent accession to the land.

In *Maro Co. v. State*, 168 S.W.2d 510 (Tex.Civ.App.—Amarillo 1943, writ ref'd), a property tax case, the court held that casing, rods, tubing, and tanks were not a part of the realty. The court observed:

> While appellant contends that the original leasehold in question here from W.T. Waggoner to Barkley & Meadows provided that the casing, rods, tubing, tanks, etc., may be removed by the lessee from the leasehold, we find only a small part of said lease in the record in this case and such a provision, if made, was not contained in that part of the leasehold in the record. However, it stands to reason that the intention of the parties to the original lease contract would be to place the casing, rods, tubing and even the pumps and tanks on such a leasehold for temporary use only with the full intention of removing them onto other leases desired, and certainly in case production became unprofitable as was the case with the leasehold in question.

Valero expressly retained its right to remove the pipeline by agreement with the right-of-way grantors. The easements provide:

> There is included in this grant the right, from time to time, to lay, construct, maintain, operate, alter, repair, *remove, change the size of and replace one or more additional lines of pipe.* (Emphasis added)

In addition, the parties agreed that Valero would have a right of access to and from the right-of-way in order to construct, inspect, repair, maintain, replace, or remove Valero's property. Valero further agreed in the written easements to pay for any physical damage caused by "replacement or removal" of the pipeline.

The contract and agreements of parties may evidence the intention of the parties that the improvements placed on the realty would never become a part of the land and never become the property of the land owner. See *Rogers v. Fort Worth Poultry & Egg Co.*, 185 S.W.2d 165 (Tex.Civ.App.—Fort Worth 1944, no writ). The written easements entered into by Valero and the land owners certainly express the intent of the parties that, at the time the pipeline was annexed, the owner of the pipeline did not intend that the pipeline would become a permanent accession to the freehold.

We think the reasoning applied by our Supreme Court in *Texas & N.O.R. Co. v. Schoenfeld*, 136 Tex. 173, 146 S.W.2d 724 (1941), a case involving railroad tracks, applies with equal force to the instant pipeline case. The Court, approving language from the Supreme Court of Kansas which applied the trade fixtures doctrine, stated:

> The road was alone adapted for the transportation of persons or property. All its parts were merely accessory for its business, and were put on the land for this purpose, and not as accessories to the land over which the road was to pass. That part of the road built on the premises of the party plaintiff in error in the suit, disconnected from other parts of the road, could not be operated and would be useless as a railroad, nor could it serve any useful purpose as an appurtenance to the land on which it was built.

> The rule has long been established in this State that material in railroad tracks is regarded as being personal property, and in erecting spur tracks and other tracks on land not owned by it, upon discontinuance of the tracks the railroad company could remove the material of which they were made. It has also been held that material in a railroad track remains personal property, and does not become a part of the underlying real estate. *Preston v. Sabine & East Texas Ry. Co.*, 70 Tex. 375, 7 S.W. 825 [(1888)].

The 36 inch pipeline, which was interconnected so that gas could be gathered and transmitted throughout a large section of the State, was not an accessory to the enjoyment of the freehold. The pipeline was adapted for the transmission of gas. All of the parts of the pipeline, including that part passing through the boundaries of the taxing units, were merely accessory to the business of Valero and were put on the land for the sole purpose of Valero.

The Supreme Court of Oklahoma in *Cherokee Pipe Line Company v. Newman*, 593 P.2d 90 (Okla.1979), a case involving a pipeline, stated:

No testimony nor any logical conclusions drawn therefrom establish that the pipe was installed for any purpose other than to benefit the appellant's predecessor pipeline company. Therefore, the pipe though buried in the soil (realty) may be removed by its lawful owner under circumstances of having been placed there merely for the purpose of trade and not for purpose of enhancing the defendant's property. *Irwin v. Smith*, 536 P.2d 415 (Okla.App.1975).

*Logan v. Mullis*, supra, cited by the taxing units, is clearly distinguishable. There, Logan owned a tract of land which was landlocked. He purchased an easement which provided:

The right of way, easement, rights and privileges herein granted shall be used only for the purpose of providing pedestrian and vehicular ingress and egress between the paved highway lying West of the Grantors' property mentioned above and the property of Grantee which adjoins the property of Grantors to the East.

It is agreed that the Grantee will build a fence along one side of the said easement as agreed with the Grantors, and further that the Grantors, their heirs and assigns, and the agents, invitees and guests of the Grantors, their heirs or assigns may also use the road way built and to be built by the Grantee.

Logan constructed a gravel road over the easement. A creek intersected the easement. Logan built a culvert beneath the road at that point. The culvert was constructed by cutting both ends off of a railroad tank car and putting it in the creek bed. When the culvert was completed, the gravel road was extended over the culvert. Several years later, Logan acquired another highway access by purchasing other property. Since he no longer needed the easement, Logan removed the metal culvert. In holding that Logan, as a matter of law, intended that the culvert would become a fixture, the Court stated:

In this case, the intention to make the tank car a fixture is conclusively established by Logan's conduct at the time he built the culvert. The manner in which he affixed the tank car to the realty, the circumstances surrounding the building and eventual destruction of the culvert, and the adaptability of the culvert to the peculiar topography of the land are all prime evidence of intention. Logan began construction by packing some substance (either clay or gravel) on the creek bed to prevent water from washing underneath the tank. After the tank car was in place, Logan used dirt, cement, and wood pilings to pack it. He also built retaining walls around the culvert. After the tank was buried, he laid a gravel road on top of it. The tank was thus embedded in the road so that a vehicle could cross over it.

The manner in which the tank car was affixed to the realty is further evidenced by the difficulty Logan had in removing it once it was embedded. Logan testified that he used several large winch trucks to hoist the tank car out of the creek. In the process, he excavated the gravel and removed the wood and concrete surrounding the tank car. Once the culvert was destroyed, the road was impassable and the stream eroded the creek banks considerably.

The purpose for which the annexation was made sheds further light on the issue of intent. In this case, it is undisputed that Logan's property was completely landlocked when he acquired the easement. He had no other prospects of obtaining access to a public road at that time. However, the easement was use-

less as a means of ingress and egress unless the creek intersecting it could be spanned. For that reason, Logan constructed the culvert.

The evidence in *Logan v. Mullis*, supra, shows clearly that Logan intended to make the tank car a permanent accession to the land. There is strong evidence in the instant case that Valero did not intend to make the pipeline a permanent accession to the land.

The taxing units argue that, because of the significant costs and importance of the pipeline, Valero would never remove the property and, therefore, that Valero intended to make the pipeline a "permanent accession to the land."

Valero clearly has a right under the easements to remove the property. The fact that the pipeline was costly to build and is part of an integrated complex system does not establish that the owner of the pipeline intended to make the pipeline a permanent accession to the land.

We hold that there is some evidence to support the trial court's finding; and, after considering all the evidence, we hold that the evidence is not factually insufficient. The taxing units' first point of error is overruled.

■ In the second point of error, the taxing units argue that TEX.TAX.CODE ANN. sec. 33.05 (Vernon 1982) violates Article III, section 55 of the Texas Constitution which provides:

The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual, to this State or to any county or defined subdivision thereof, or other municipal corporation therein, except delinquent taxes which have been due for a period of at least ten years.

TEX.TAX CODE ANN. sec. 33.05 (Vernon 1982) provides:

(a) Personal property may not be seized and a suit may not be filed:

(1) to collect a tax on personal property that has been delinquent more than four years; or

(2) to collect a tax on real property that has been delinquent more than 20 years.

(b) A tax delinquent for more than the limitation period prescribed by this section and any penalty and interest on the tax is presumed paid unless a suit to collect the tax is pending.

Our Supreme Court in *Sam Bassett Lumber Co. v. City of Houston*, 198 S.W.2d 879 (Tex.1947), rejected the taxing units' contention. There, the Court determined that TEX.REV.CIV.STAT.ANN. art. 7298 (1951) (repealed January 1, 1982) [the predecessor statute to Section 33.05 of the Property Tax Code] did not violate the constitutional provisions prohibiting the release or extinguishment of an indebtedness, liability, or obligation to a governmental taxing unit. The Court said:

[T]he Legislature, notwithstanding the constitutional inhibitions, had the power to enact such legislation governing the collection of taxes due any taxing unit.... [L]imitation statutes do not release or extinguish the debt, but merely affect the remedy when its enforcement is sought.

The four-year limitation provision of Section 33.05 of the Property Tax Code does not release or extinguish tax debts, liabilities, or obligations owed governmental entities. Section 33.05 is constitutional, and the trial court correctly held that the taxing units' suits were barred by the four-year limitation period. See also Op.Tex. Att'y Gen. No. WW–107 (1957); Op.Tex. Att'y Gen. No. WW–298 (1957).

The judgment of the trial court is affirmed.