Katherine TRENOLONE,
et al., Appellants,

v.

COOK EXPLORATION COMPANY,
individually and d/b/a Ponderosa
Gathering L.L.C., Appellee.

No. 06–03–00158–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Jan. 20, 2005.

Decided June 16, 2005.

John R. Mercy, Mercy, Carter, Tidwell, LLP, Texarkana, Clay Wilder, Wilder & Wilder, PC, Henderson, for appellants.

Elizabeth G. Bloch, Craig A. Morgan, Brown McCarroll, LLP, Austin, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

From an abandoned, subsurface, natural-gas pipeline under a residential development has erupted a dispute over whether Cook Exploration Company and Ponderosa Gathering, L.L.C. (collectively called "Cook") could rightfully transport gas through the pipeline under the homes and over the objections of Katherine Trenolone and her neighbors and fellow plaintiffs (collectively called "Homeowners"). From a summary judgment in favor of Cook, Homeowners appeal, asserting that fact issues exist as to ownership of both the pipeline and the easement and as to the right to use the pipeline. Cook asserts both that its lease entitles it to use the pipeline and also that the pipeline, as abandoned personalty, became owned by Cook, the first to possess the pipeline after its abandonment. We hold the summary judgment was improper because (1) fact issues exist as to whether Cook, as gas lessee, has a right to use the easement, and—although (2) the pipeline is conclusively personalty—(3) neither side conclusively proved ownership of it.

To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

In reviewing a summary judgment, we accept all the nonmovant's proof as true and indulge every reasonable inference in the nonmovant's favor. *Martinez*, 941 S.W.2d at 911. All doubts about the existence of a genuine issue of a material fact must be resolved against the movant. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996).

1. *Fact Issues Exist as to Whether Cook, as Gas Lessee, Has a Right to Use the Easement*

■ Homeowners contend the release of the pipeline right-of-way easement vested ownership of the easement back into the owners of the real property; hence, absent a right-of-way easement, Cook could not use the pipeline. Cook argues that it, as mineral lessee, has the right to make rea-

sonable use of both the surface and the subsurface of the property to give effect to its oil, gas, and mineral lease, and that part of that reasonable use is the use of this pipeline.

In 1983, C.P. and Edna Denson executed an oil, gas, and mineral lease to Cook Exploration Company. In 1991, Eugene and Jo Ann Porter also executed an oil, gas, and mineral lease to Cook Exploration Company. In 1992, the oil, gas, and mineral leases of Denson and Porter were pooled and consolidated to form a single production unit known as the "Cook Exploration Company C.P. Denson Gas Unit. No. 2." The consolidated lease covers the right-of-way property held by Trident N.G.L., Inc.

■ The mineral lease gives Cook the dominant estate. *Ball v. Dillard,* 602 S.W.2d 521, 523 (Tex.1980). The holder of the dominant estate has the right to use the land, both surface and subsurface, absent an express limitation, as is reasonably necessary to enjoy the terms of the lease contract and to carry out the purposes and intentions of the parties. *Id.; Brown v. Lundell,* 162 Tex. 84, 344 S.W.2d 863, 865 (1961).

■ But whether the lease's grant of the dominant estate carries the right to use the particular easement is a fact question.

Although the mineral estate is the dominant estate, the rights implied in favor of the mineral estate are to be exercised with due regard for the rights of the surface owner. *Getty [Oil Co. v. Jones,* 470 S.W.2d 618, 621 (Tex.1971) ]; *General Crude Oil Co. v. Aiken,* 162 Tex. 104, 344 S.W.2d 668, 669 (1961); *Gulf Production Co. v. Continental Oil Co.,* 139 Tex. 183, 132 S.W.2d 553, 563 (1939). The accommodation doctrine is based on this concept of "due regard." [*Getty,*

470 S.W.2d] at 622. The accommodation doctrine, also known as the "alternative means" doctrine, was first articulated in *Getty* as a means to balance the rights of the surface owner and the mineral owner in the use of the surface:

Where there is an existing use by the surface owner which would otherwise be precluded or impaired, and where under established practices in the industry there are alternatives available to the lessee whereby minerals can be recovered, the rules of reasonable usage of the surface may require the adoption of an alternative by the lessee. [Footnote omitted.]

*Getty,* 470 S.W.2d at 622. This right of accommodation between the surface and mineral estates is dependent upon the state of the evidence and the findings of the trier of the facts. *Id.* at 623. In *Getty,* the surface owner's "most advantageous, and perhaps the only reasonable means of developing the surface for agricultural purposes" was the rolling irrigation system that was blocked by Getty's pumpjacks. *Id.* at 622. Getty had available either submerged pumps in concrete cellars or surface-mounted hydraulic pumps that were no taller than the irrigation system, which this court held to be "reasonable alternatives to its present use of the surface." *Id.* (emphasis added).

The burden of proof to show that the use of the surface by the lessee is not reasonably necessary is upon the surface owner. *Id.* This may be proven by showing that the lessee's use of the surface is not reasonably necessary because of non-interfering and reasonable ways and means of producing the minerals that are available, the use of which will permit the surface owner to continue the existing use of the surface. *Id.*

*Tarrant County Water Control & Improvement Dist. Number One v. Haupt, Inc.*, 854 S.W.2d 909, 911 (Tex.1993). Fact questions exist. Therefore, further proceedings are required to resolve the fact question whether Cook, as gas lessee, has a right to use the easement in question.

*2. The Pipeline Is Conclusively Personalty*

 Homeowners argue that the pipeline is real property and not personal property; hence, the "finders keepers law" does not apply and the abandoned pipeline reverted to the owners of the surrounding real property. Whether property embedded in the soil is realty or remains personal property is a fact question. *Logan v. Mullis*, 686 S.W.2d 605, 608 (Tex.1985). It is the intent of the party placing the property that is critical in determining the character of the property. *Id.; Sonnier v. Chisholm–Ryder Co., Inc.*, 909 S.W.2d 475, 479 (Tex.1995).

 To determine if personal property has become part of the realty, three factors are relevant:

(1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty. The third criterion dealing with intention is preeminent, whereas the first and second criteria constitute evidence of intention.

Intent is made apparent by objective manifestations. As a general rule, intent is a question of fact to be decided by the jury. However, even testimony of intention that the chattel was not meant to become a fixture will not prevail in the face of undisputed evidence to the contrary. Where reasonable minds cannot differ, the issue is one of law rather than one of fact.

*Mullis*, 686 S.W.2d at 607 (citations omitted). Homeowners argue the testimony of Jim Hawkins, Trident's plant superintendent, demonstrates Trident's clear intent for homeowners to become the owners of the pipeline, thus making the pipeline part of the land. Trident's intent is not relevant here.

A thirty-six inch diameter, 390 mile long, pipeline carrying natural gas was deemed not a part of the realty. *See Lingleville Indep. Sch. Dist. v. Valero Transmission Co.*, 763 S.W.2d 616 (Tex.App.-Eastland 1989, writ denied). That resulted because the pipeline installer expressly retained its right to remove the pipeline and the agreement provided that "Valero would have a right to access to and from the right-of-way in order to construct, inspect, repair, maintain, replace, *or remove* Valero's property." *Id.* at 618 (emphasis added).

 An agreement may evidence the intention of the contracting parties that the improvements placed on the realty would not become a part of the land and thus not the property of the landowner. *Id.* Here, in 1961 Cities Services acquired a right-of-way easement to construct, repair, and maintain a gas transportation pipeline under what became the residential neighborhood of Homeowners. The right-of-way easement provided:

This right-of-way agreement may be assigned by GRANTEE, its successors and assigns, in whole or in part, vesting in any other person, firm or corporation any or all rights granted hereby, including the ownership of any facilities in place, together with full rights of ingress and egress for the maintenance, repair, operation, replacement *and removal thereof.*

(Emphasis added). The written easement between Cities Services and the landowners expressed the intent of the parties that

the pipeline would not become a permanent accession to the freehold. As per the agreement, Trident—successor in interest to Cities Services—even removed portions of its pipeline and capped the rest.

The pipeline was also not an accessory to the enjoyment of the freehold. It was adapted just for the transmission of gas, accessory to the business of Cities Services and for its sole purpose. On similar facts, the Texas Supreme Court found that property installed on realty remained personalty.

> [The railroad] parts were merely accessory for its business, and were put on the land for this purpose, and not as accessories to the land over which the road was to pass.... [Thus,] the spur track involved in this controversy was not at any time, and never became, a permanent fixture and a part of the realty....

*Tex. & New Orleans R.R. Co. v. Schoenfeld,* 136 Tex. 173, 178, 146 S.W.2d 724 (1941). Cities Services' intent to keep the pipeline personalty is apparent from the evidence. Homeowners did not submit any contrary evidence of Cities Services' intent. In light of the undisputed evidence, the pipeline is personal property.

### 3. Neither Side Conclusively Proved Ownership of the Pipeline

#### A. Homeowners Did Not Conclusively Prove Their Ownership

■ Homeowners contend that, by virtue of Trident's intentions when it released its right of way, August 12, 1993, the pipeline is now owned by Homeowners, not Cook. As part of their argument, Homeowners claim Trident released the easement "to the property owners," but the release names no recipient or beneficiary of the release. Homeowners also assert that the legal effect of the release is to vest the easement in the surface owners,

citing *Shaw v. Williams,* 332 S.W.2d 797, 800 (Tex.Civ.App.-Eastland 1960, writ ref'd n.r.e.). *Shaw* involved an easement for access to, and rights to pump water from, a lake. The appellate court held that, once the easement holder released the easement, it reverted to the landowner. True, the court examined intent, but it focused on the intent of the parties to the deed which created the rights in question and, from that intent, determined the deed created an easement—which, once abandoned, reverted to the landowner—not a determinable fee simple as was claimed by one of the parties. *Id.* In *Shaw,* the intent of the party abandoning the easement was not important. Likewise, here, the intent of the parties to the original pipeline agreement is important, not Trident's intent. We conclude, on the authority of *Shaw,* that the easement, when released, reverted to the associated landowners, possibly subject to reasonable use by the holder of the dominant estate, dependent on a fact issue.

But that does not answer the question about the ownership and right to use the pipeline itself. Given that it is personalty, its ownership does not necessarily follow ownership of the easement. *See Pearson v. Black,* 120 S.W.2d 1075, 1079 (Tex.Civ.App.-Eastland 1938, no writ) (discussed below). Homeowners did not conclusively prove ownership of the pipeline.

#### B. Cook Did Not Conclusively Prove Its Ownership

■ Cook claims ownership of the pipeline through its use of the abandoned personal property. Title to abandoned personal property vests in the first person lawfully reducing it to possession. *Black,* 120 S.W.2d at 1079. In general, abandonment means "the relinquishment of the possession of a thing by the owner with the intention of terminating his ownership,

but without vesting it in any one else." *Id.* "Abandoned personalty is no man's property until reduced to possession with intent to acquire title." *Gregg v. Caldwell–Guadalupe Pick–Up Stations,* 286 S.W. 1083, 1084 (Tex. Comm'n App.1926, holding approved).

In 1911, Black entered into an oil and gas lease with Texas Company. *Black,* 120 S.W.2d at 1077. Link Oil Corporation ("LOC"), the successor in interest to Texas Company, drilled a well on the property, placed on it a quantity of drilling equipment and well casings, built a rig, and discovered gas. *Id.* The well continued to produce gas until about January 1, 1932, at which time LOC abandoned it. *Id.* Pearson entered on the land and removed 3,027 feet of casing. *Id.* at 1078. The court ruled that the casing, as personalty, did not revert to the landowners upon abandonment:

> Assuming, as said before, that title to the oil, gas, coal and other minerals granted by the instrument and being a freehold estate in land—a determinable fee estate—could be lost or extinguished by simple abandonment, and that the title would as a consequence revest in the former owners of the land, it does not follow, in our opinion, that title to the casing would by abandonment ipso facto vest in such former owners of the land. Under the lease, such personal property was not a part of the land.... There was a contract right to remove such personal property at will which would not have been affected by an abandonment of the lease.... We know of no rule or principle of law to the effect that abandoned personal property becomes the property of him upon whose land it happens to be left.

*Id.* at 1079. The court held in favor of Pearson, based on the evidence that Pearson was the first to take an actual posses-sion of the casings once abandoned. *See id.* Similarly, the pipeline here is personalty; hence, on abandonment the pipeline did not automatically revest in the former or current owners of the land.

The facts of the case at hand do not, in our opinion, satisfy the requirement of *Black* to vest the interest in Cook. We understand *Black* to mean that, to ripen title to personalty, a person must reduce it to lawful possession *after* the property has been abandoned. To read *Black* otherwise is contrary to its language and would reward one who, at least initially, was a converter—or at least an unauthorized possessor—of personalty before it had been abandoned. The evidence suggests at least the possibility that Cook possessed the pipeline before it had been abandoned, but exactly when it was abandoned appears to be a fact issue.

Certainly on August 12, 1993, Trident formally released the right-of-way easement and abandoned the pipeline. By this time, however, Cook was already using the pipeline to transport gas from Denson No. 2 well. It is not disputed that Cook began using the pipeline in 1991 and continued using it after August 12, 1993, the date it was officially abandoned. This is in contrast to the facts of *Black,* in which Pearson and Jensen carried away the well casing only *after* its abandonment.

Here, if the pipeline was abandoned only in 1993 and not before, Cook took possession of unabandoned personal property contrary to the expressed wishes of its owner. Yet there is evidence suggesting the pipeline may have been informally abandoned before Cook started using it in 1991. That is a fact question. Therefore, further proceedings are required in the trial court to determine whether the evidence shows the pipeline's abandonment before Cook began its use.

We reverse the judgment and remand this cause for further proceedings in accordance with this opinion.