2008-NMCA-078

185 P.3d 383

**XTO ENERGY, INC., as successor in interest to Amoco Production Company, Plaintiff–Appellee,**

v.

**Fred Gilbert ARMENTA, Defendant–Appellant.**

**No. 27,329.**

Court of Appeals of New Mexico.

April 24, 2008.

Holland & Hart, LLP, Michael H. Feldewert, Larry J. Montaño, Santa Fe, NM, for Appellee.

George Harrison, Farmington, NM, Daniel H. Israel, Boulder, CO, for Appellant.

## OPINION

VIGIL, Judge.

{1} Defendant appeals from a district court order granting Plaintiff authority to relocate a road used to access Plaintiff's gas wells on Defendant's property. Defendant argues that Plaintiff is required to maintain and repair the existing access road, which was washed out by the adjacent river and made impassable, rather than relocate the access road. We affirm the district court, holding that the district court did not abuse its discretion in granting Plaintiff reasonable access to its wells by relocating the access road.

## FACTUAL AND PROCEDURAL BACK-GROUND

{2} Defendant's parents entered into an oil, gas, and mineral lease with Plaintiff's predecessor-in-interest in 1955. Pursuant to the lease, Defendant retained ownership of the surface property, while Plaintiff was granted rights to explore for and produce gas found below the surface. The lease expressly grants Plaintiff authority to build roads in order to conduct its operations. However, the lease does not address maintenance of the roads.

{3} In late 1991, Plaintiff's predecessor-in-interest brought suit against Defendant, alleging that Defendant was interfering with its right to conduct business. Defendant filed a counterclaim, alleging harassment and damage to his surface estate. The parties resolved the case by entering into the Stipulated Permanent Injunction, which the district court approved and adopted. The Stipulated Permanent Injunction recites, among other things, "[Plaintiff] has a contractual and property right to use the access roads and to conduct its business on the premises without interference .... [and it orders that Defendant] shall not take any steps or make

an effort to preclude reasonable access to [Plaintiff's] wells by employees or agents of [Plaintiff]."

{4} In July 2004, Plaintiff and Defendant entered into a Damage Release in response to new allegations by Defendant of damage to his surface property. Pursuant to this release, Plaintiff paid Defendant a sum of money in full settlement and discharge of Defendant's claims. Additionally, the release requires Plaintiff to "conduct all operations on the lands in a good and workmanlike manner, and shall use all normal precautions to prevent future damages to said land." The release did not address maintenance of access roads.

{5} The road historically used to access the wells was located adjacent to the San Juan River. The Endangered Species Act, 16 U.S.C. § 1531 (2000), required high spring flows to be released upstream from the Navajo Reservoir in May 2005. This caused portions of the south bank of the San Juan River to erode. It is undisputed that none of the erosion is attributable to Plaintiff and that it was caused only by the river flow. Further, it is undisputed that because the erosion is from the reservoir release mandated by the Endangered Species Act, the river bank will continue to erode in the future. The erosion rendered Plaintiff unable to access its wells, so Plaintiff began investigating alternatives to gain access. Plaintiff acquired three estimates: one to rebuild the river bank and road; one to build a new road on the east side of the property; and one to build a new road just south of the old road. The estimate to rebuild the river bank and road was $133,079.06, whereas the estimates to build the new roads were $24,573.82 and $20,398.13 respectively.

{6} Plaintiff approached Defendant to negotiate placement of a new road. However, Defendant was unwilling to discuss the possibility of building a new road, insisted that Plaintiff repair the old road, and denied Plaintiff permission to temporarily access its wells by driving around the eroded area. Defendant continued to deny Plaintiff temporary access even though there was a gas spill on the property that needed to be cleaned up. As a result of its inability to access its wells, Plaintiff was forced to shut in the wells to reduce environmental risks. This resulted in substantial loss of revenue to Plaintiff.

{7} Plaintiff then filed a motion to enforce the Stipulated Permanent Injunction, arguing that Defendant was denying it reasonable access to its wells. The district court held a multi-day evidentiary hearing in which Plaintiff argued the need to relocate the access road, and Defendant argued that Plaintiff was required to repair and continue to use the old access road. Ultimately, the district court found that Plaintiff has a right to access its wells on Defendant's property, that neither party is obligated to repair the river bank and old road, and that Plaintiff is entitled to relocate the access road. The district court appointed a special master to make recommendations concerning the route of the road and appropriate compensation for the resulting loss of surface rights. In accordance with the special master's recommendations, the district court granted Plaintiff the right to construct a new road near the old road to join up with the old road past the eroded portion. In addition, the district court awarded Defendant annual compensation for lost hay production where the new road is to be located. Defendant appeals.

## STANDARD OF REVIEW

{8} This case involves equitable enforcement of the Stipulated Permanent Injunction, and ultimately the oil, gas, and mineral lease. Our review is whether the district court abused its discretion. *Builders Contract Interiors, Inc. v. Hi–Lo Indus., Inc.,* 2006–NMCA–053, ¶ 6, 139 N.M. 508, 134 P.3d 795.

## DISCUSSION

{9} Defendant argues that Plaintiff had a duty to maintain and continue to use the original road. In support of his argument, Defendant relies on cases which discuss the obligation of one who uses an easement to maintain it if he wishes to continue to use it. *See McGarry v. Scott,* 2003–NMSC–016, ¶¶ 21–22, 134 N.M. 32, 72 P.3d 608 (discussing *Dyer v. Compere,* 41 N.M. 716, 720, 73 P.2d 1356, 1359 (1937) ("The owner of the servient estate is under no obligation, in the absence of special agreement, to repair or

maintain the way, the rule being that he who uses the easement must maintain it in proper condition or suffer the resulting inconvenience.") and *Kennedy v. Bond,* 80 N.M. 734, 738, 460 P.2d 809, 813 (1969) (affirming the trial court apportionment of the cost of maintaining a road easement in relation to its relative use by the parties)). *See also Walsh v. United States,* 672 F.2d 746, 749–50 (9th Cir.1982) (noting the common law duty of the owner of an easement to repair and maintain it); *Koeppen v. Bolich,* 2003 MT 313, ¶ 52, 318 Mont. 240, 79 P.3d 1100 (stating that the owner of an easement cannot select a new route without the consent of the owner of the servient estate); *Island Improvement Ass'n v. Ford,* 155 N.J.Super. 571, 383 A.2d 133, 134 (App.Div.1978) (noting that in the absence of an agreement, the owner of an easement has a duty to maintain and repair it). However, because the case before us does not involve an easement, these authorities are not applicable or persuasive in resolving the question before us.

{10} This dispute arises out of an oil, mineral, and gas lease. Under such a lease, the lessee holds the dominant estate and the lessor holds the servient estate. *Ball v. Dillard,* 602 S.W.2d 521, 523 (Tex. 1980). As holder of the dominant estate, the lessee "has the right to use the land, both surface and subsurface, absent an express limitation, as is reasonably necessary to enjoy the terms of the lease contract and to carry out the purposes and intentions of the parties." *Trenolone v. Cook Exploration Co.,* 166 S.W.3d 495, 498 (Tex.App.2005). The lease in this case grants Plaintiff the right to utilize Defendant's surface property as is reasonably necessary to carry out its business. This includes the right to access its wells. There is no indication in the record that this right was expressly limited. As a result, Plaintiff has a right to access roads to cross Defendant's property. The road historically used for this purpose was significantly eroded and became impassable, which created a need for an alternative, reasonable route. Defendant argues that the 2004 Damage Release requires Plaintiff to repair the impassable road. However, the release only addresses damage caused by Plaintiff, and

the damage to the old road was caused by high spring flows, not by Plaintiff.

{11} Plaintiff's right to reasonable access must be exercised with due regard for Defendant's rights. *Id.* Such due regard requires balancing both the right of the surface owner to make use of his property and the right of the lessee to conduct its operations. *Id.* "The burden of proof to show that the use of the surface by the lessee is not reasonably necessary is upon the surface owner." *Id.* "This may be proven by showing that the lessee's use of the surface is not reasonably necessary because of non-interfering and reasonable ways and means of producing the minerals that are available, the use of which will permit the surface owner to continue the existing use of the surface." *Id.*

{12} In determining what is reasonable, the district court considered both Plaintiff's need to access its wells and Defendant's use of the surface property. Plaintiff submitted proposals for two alternative routes. After considering both routes, as well as the possibility of repairing the original road, the district court concluded that constructing a new road south of the old road, to intersect with the existing road just past the point of erosion, was the most reasonable option. In making its determination, the district court concluded that neither party was obligated to rebuild the river bank and repair the old road. Besides being much more expensive, there is a strong likelihood that erosion will continue in the future because the high spring flows result from reservoir release mandated by the Endangered Species Act. The district court further found that the southern route chosen, rather than the eastern route, had the least impact on Defendant's surface rights. Finally, recognizing that Defendant has been using the surface area for hay production, the district court awarded Defendant compensation based on the value of the hay he would have grown.

{13} We conclude that the district court properly balanced both party's rights, granting Plaintiff reasonable access to its wells while minimizing the impact on Defendant's property rights. Defendant has failed to es-

tablish on appeal that the district court abused its discretion in fashioning the remedy it did. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Amkco, Co. v. Welborn,* 2001–NMSC–012, ¶ 8, 130 N.M. 155, 21 P.3d 24 (quoting *State v. Woodward,* 121 N.M. 1, 4, 908 P.2d 231, 234 (1995)).

## CONCLUSION

{14} The final order of the district court is affirmed.

{15} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.